IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM A. LOPEZ,

        Plaintiff,

vs.                              No. CIV 96-1470 MV/LFG

NORMAN MICK,

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

This is a pro se, in forma pauperis civil rights action brought pursuant to 42 U.S.C. § 1983 by Plaintiff William A. Lopez ("Lopez"). Lopez alleges that his constitutional rights were violated while he was held as a pretrial detainee at the Otero County Detention Center ("OCDC"). In particular, he challenges his medical care and the conditions of his confinement. Several other prisoners were named as plaintiffs, but all have subsequently been dismissed as parties for failure to prosecute. *See* Order, filed February 27, 1998. Lopez named as defendants, John Lee, Sheriff, Commissioner Richard Zierlein, Commissioner Tom McGinn, Commissioner Ronny Drandin and Commissioner Norman Mick. All, but Defendant Norman Mick, were dismissed in a Memorandum Opinion and Order entered May 13, 1997. Lopez seeks injunctive and compensatory damages.

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

This matter is before the Court on Defendant Norman Mick's ("Mick") Motion for Summary Judgment [Doc.No. 29], filed January 12, 1998; upon Lopez's responses, filed March 16, 1998 and March 27, 1998; and Mick's reply, filed March 31, 1998.  In addition, Lopez filed a Motion to Strike Defendant's Motion for Summary Judgement on April 10, 1998 [Doc. No. 45].  The Court reviewed the papers and construed Lopez's pro se papers liberally, holding him to a less stringent standard than that required of a party represented by counsel.  *See, e.g.*, *Gillihan v. Shillenger*, 872 F.2d 935, 938 (10th Cir. 1989).

## Summary Judgment Standards

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56: *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598 (1970); *Quaker State Minit-Lube, Inc., v. Firemen's Fund Ins. Co.,* 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment must shoulder the initial burden of establishing the absence of a question of fact.  *Adickes*, 398 U.S. at 144.  That burden is carried when the moving party demonstrates that the undisputed facts entitle the moving party to judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548 (1986).  That initial burden can be shouldered when the moving party demonstrates by way of admissible evidence, by deposition, answers to interrogatories, admissions, affidavits or documentary evidence that the undisputed facts entitle the moving party to judgment.  *Id.*

A party opposing summary judgment must do more than rely on its pleadings or mere argument or contention to defeat a *prima facie* showing of an entitlement to judgment.  Federal law

provides that the party opposing the motion for summary judgment must affirmatively come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Id.* at 234. The requirement is made clear in the rule itself:

> An adverse party may not rest upon mere allegations or denial of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, will be entered against the adverse party.

Fed. R. Civ. P. 56. Thus, the burden on the party opposing a motion for summary judgment is significantly greater when the moving party successfully makes a *prima facie* showing of entitlement to judgment. The test is not whether the party opposing the motion will be able to demonstrate a factual dispute at trial, but, rather, whether that party can demonstrate the presence of a material, factual dispute in response to the moving party's *prima facie* showing. The Court will consider Mick's motion in light of the above standards.

Lopez contends that the sinks leaked, and he slipped on the wet floor and broke his nose. Lopez states that he was taken to the hospital, treated and returned to OCDC. There, he takes issue with being given sinus pills for headache pain. In addition, Lopez complains about the conditions of OCDC. He asserts that the water jugs were not cleaned, the toilets leaked, there were problems with the showers (not enough hot water), light fixtures did not work, there were holes in walls and ceilings, there were cockroaches and other bugs, there was the smell of sewer gas, no outside recreation, no screening of prisoners with infectious diseases and misdemeanor offenders were integrated with felons.

Mick, on the other hand, claims that Lopez's allegations do not rise to the level of a constitutional violation and that his claims for injunctive relief should be dismissed because Lopez is no longer incarcerated at OCDC; and also because Mick is no longer employed by OCDC.  Mick further argues that the complaint should be dismissed because Lopez did not exhaust his administrative remedies.

OCDC was built in the early 1950's.  It was remodeled in 1990.  (Def.M.S.J. Aff. V. Jenkins, ¶ 2).  A new detention center is scheduled to open in 1998.  *Id.* ¶ 20.  Mick was the administrator of OCDC from February 16, 1989 through January 1, 1997.  (Def.M.S.J. Ex. Aff. Mick ¶ 2).  Vick Jenkins became the current administrator on March 23, 1997.  *Id.*  (Ex. Aff. Jenkins ¶ 2).  Lopez has been jailed at OCDC on several occasions.  He was jailed on March 23, 1994 for trafficking heroin and related crimes.  He was released on bond on April 15, 1994.  He was arrested again for trafficking heroin and detained from June 11, 1996 through December 5, 1996.  Finally, he was arrested for trafficking heroin and detained from January 29, 1997 through March 20, 1997.  *Id.* (¶ 4).

The uncontroverted material facts are as follows.  The OCDC has adopted and follows an internal grievance procedure.  Lopez did not utilize the grievance process before filing suit.  *Id.* (¶ 13).

OCDC does not employ a full-time physician.  It contracted with Jagdev Singh, M.D. to provide medical services.  Dr. Singh visits the jail weekly, and is on call for emergencies.  *Id.*  (¶¶ 14, 15).  Dr. Singh also examines prisoners for contagious diseases.  Arthur Grammot ("Grammot") has been the medical officer since July 1990.  He is certified to give first aid and CPR.  Grammot's duties include evaluating the sick and injured, scheduling appointments, dispensing medication, following

up on patient treatment and monitoring inmates going through drug withdrawal. (D.M.S.J. Ex. Gammont Aff. ¶ 2).

There are eighty-three (83) adult beds and ten (10) juvenile beds. When there are more prisoners than beds, two to three inmates are assigned portable beds in day rooms. The maximum population is 105. (D.M.S.J. Ex. Aff. Jenkins ¶ 18).

There was a construction project at the jail from May 22, 1996 through March 17, 1997. *Id.* (¶ 21). Construction resulted in pieces of concrete falling from the ceiling and increased noise. *Id.* (¶ 22).

OCDC had an outdoor recreation facility. However, when construction began, it was necessary to take down the security netting. As a result, the outdoor facility was not used from August 21, 1996 to October 24, 1996. *Id.*

Each cell contains a toilet and sometimes the toilets leak. OCDC has a contract with a local plumber for routine maintenance. *Id.* (¶ 24). On occasion, there is a sewer odor. When this happens, bleach is poured down the drain or a snake is used. (¶ 25).

The OCDC has two one-hundred gallon water heaters. The heaters have regulators that keep the water from getting too hot. The water heater runs out of hot water when overused. *Id.* (¶ 27). Lopez never reported being scalded. *Id.* (¶ 27). Lopez also never reported slipping in the shower. *Id.* (¶ 28).

OCDC uses city water for drinking purposes. There are several drinking faucets available in each cell block. When a faucet is not working, large jars are filled with water. *Id.* (¶ 29).

Each prisoner cleans his own cell with cleaning supplies provided by OCDC. *Id.* (¶ 30). OCDC is sprayed at least twice a month for insects. *Id.* (¶ 32).

The OCDC has an intercom system. Each cell has a call button which is connected to the control room. *Id.* (¶ 34).

Finally, when possible, OCDC separates misdemeanor offenders from felons, and when it is unable to do so because of overcrowding, misdemeanor offenders are placed with nonviolent felons. *Id.* (¶ 36).

Mick contends that Lopez's claim for injunctive relief cannot lie against him since he has retired. Mick's argument is well-taken. Applications for injunctive relief brought against a retired or former government official are improper. *See Condos v. Conforte,* 596 F. Supp. 197, 200 (D. Nev. 1984). Accordingly, Lopez's claims for injunctive relief against Mick should be dismissed.

Moreover, an inmate's claim against a detention facility becomes moot once the inmate is released. Since Lopez is no longer housed at OCDC, the entry of a declaratory judgment in his favor would have no effect on Defendant's behavior towards him. *See Green v. Branson*, 108 F.3d. 1296 (10th Cir. 1997). Thus, any claims he might have had for injunctive relief are moot.

Mick contends the instant action should be dismissed because Lopez did not exhaust available administrative remedies. Mick submits that OCDC promulgated an internal grievance procedure, and that Lopez never used the procedures. In his unsworn response, Lopez counters that he did not file a grievance because there would be no response and that complaints were met with harassment by guards. Lopez proffers no evidence in support of his allegations.

The Prison Reform Litigation Act ("PRLA") provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement is a mandatory prerequisite to filing suit and, when not done, the court is required to dismiss the action.  *See Garrett v. Hack*, 127 F.3d 1263, 1264-65 (10th Cir. 1997); *Brown v. Tombs*, 139 F.3d 1102, 1104 (6th Cir. 1998), *pet. cert.* filed (April 28, 1998)(No. 97-8990).  Lopez's arguments about the futility of filing a grievance is unavailing and summary judgment should entered in Mick's favor on his prison conditions claim.

Notwithstanding that dismissal would be appropriate on the above ground, the Court reviewed the merits of Lopez's claims concerning the conditions of his confinement and finds them conclusory and without merit.  Conclusory allegations are insufficient to state a cause of action.  *See Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).  Lopez's claim is construed under the Eighth Amendment.  Our circuit in *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998), recently set forth the criteria for reviewing this type of claim:

> In order to hold prison officials liable for violating an inmate's right to human conditions of confinement, two requirements must be met. First, the deprivation alleged must be objectively "sufficiently serious" depriving the inmate of "'the minimal civilized measure of life's necessities.'"  Second, the official must have a "sufficiently culpable state of mind," which in this context means the official must exhibit "deliverate indifference" to a substantial risk of serious harm to an inmate.  Thus, the deliverate indifference in a prison conditions case is a "subjective" and not an "objective" requirement.  That is, a prison official is liable only if the "official knows of and disregards an excessive risk to inmate health and and safety."  It is not enough to establish the official should have known of the risk of harm.  (citations omitted.)

To prevail on a "conditions of confinement" claim, Lopez must show serious deprivation and deliberate indifference.  *See Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Here, Lopez alleges such indignities he was made to suffer such as a dirty water jug, leaking toilets, excessive noise, cockroaches, and no access to recreation facilities.  "The Eighth Amendment `does not mandate

7

comfortable prisons' conditions imposed may be `restrictive and even harsh.'" *Id.* at 1311 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). None of the items cited to by Lopez separately or individually rise to a deprivation of a single human need. Moreover, Lopez makes no allegations concerning the knowledge or intentions of Mick. He does not allege any facts to demonstrate the requisite culpable mental state by Mick. All of these conditions were specifically denied by Mick, and Lopez presented no facts sufficient to show a genuine issue of material fact. Lopez also appears to argue that Mick was negligent in having slippery floors. Negligence alone does not constitute a valid Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In fact, negligence, gross negligence, or even ordinary recklessness are not actionable under Section 1983. Accordingly, judgment should be entered in favor of Mick on all of Lopez's claims concerning the conditions of his confinement.

Finally, Lopez alleges that Mick violated the Eighth Amendment by failing to provide attention to his medical needs. Lopez takes issue with being given sinus headache pills for his broken nose pain. The Eighth Amendment prohibits the deliberate indifference to a prisoner's serious medical needs. The deliberate indifference standard described above applies equally to this claim. Here, Lopez does not dispute that he was taken to the hospital for treatment and given medication to control his pain. While he may take issue with the type of medication given, a difference of opinion with respect to medical treatment does not support a claim of cruel and unusual punishment. *See Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993). The Court finds that Lopez's allegations do not rise to the level of an Eighth Amendment claim. Therefore, judgment should be entered in favor of Mick.

## **Recommended Disposition**

That judgment be entered in favor of Mick on all of Plaintiff Lopez's claims, and the action be dismissed with prejudice.

                                                        Lorenzo F. Garcia
                                                        United States Magistrate Judge

PLAINTIFF:
William D. Lopez, pro se

ATTORNEY FOR DEFENDANT:
Thomas A. Sandenaw, Jr., Esq.